UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

THOMAS S.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

6:20-CV-6738-LJV
DECISION & ORDER

---

On September 21, 2020, the plaintiff, Thomas S. ("Thomas"), brought this action under the Social Security Act ("the Act"). He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On September 3, 2021, Thomas moved for judgment on the pleadings, Docket Item 12; on January 28, 2022, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 13; and on March 11, 2022, Thomas replied, Docket Item 14.

For the reasons that follow, this Court grants Thomas's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

Thomas argues that the ALJ erred in three ways. Docket Item 12-1. First, Thomas argues that the ALJ "improperly rejected" the opinion of Thomas's therapist, licensed mental health counselor Lauren Stanley, with whom Thomas had "an ongoing

treating relationship." *Id.* at 15.  Second, Thomas argues that the ALJ improperly evaluated his credibility and did not consider that Thomas's "non-compliance issues may be related to his mental health conditions." *Id.* at 17.  Third, Thomas argues that the ALJ erroneously based his physical residual functional capacity ("RFC")[3] on a "stale and incomplete medical consultative opinion." *Id.* at 20.

This Court agrees that the ALJ erred and, because that error was to Thomas's prejudice, remands the matter to the Commissioner.

In determining a claimant's RFC, an ALJ must evaluate every medical opinion received "[r]egardless of its source." 20 C.F.R. § 416.927(c).  Not all medical opinions are entitled to the same weight, however.  For example, licensed mental health counselors "are defined as 'other sources'[4] whose opinions . . . need not be assigned controlling weight."[5] *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (quoting 20

---

[3] A claimant's RFC "is the most [he] can still do despite [his] limitations," 20 C.F.R. § 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 86–8, 1986 WL 68636, at *8 (Jan. 1, 1986)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

[4] When Thomas filed his claim on July 27, 2016, Docket Item 11 at 151, counselors and therapists were considered "other source[s]," *see* 20 C.F.R. § 416.913(d), whose opinions could not "establish the existence of a medically determinable impairment"; but an opinion from such a source still could "outweigh the opinion of an 'acceptable medical source[ ]' . . . [if, f]or example, . . . [the other source] has seen the individual more often . . . and has provided better supporting evidence and a better explanation for his or her opinion," SSR 06-03p, 2006 WL 2263437, at *45596 (Aug. 9, 2006).

[5] "[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight.  'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)).  Though nonmedical source opinions are not entitled to the deference afforded opinions of treating medical sources, the ALJ must

3

C.F.R. § 416.913(d)(1)).  Nevertheless, the ALJ will evaluate the opinions of other sources based on, *inter alia*, (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) the evidence supporting the opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the source is a specialist.  20 C.F.R. § 416.927(c)(1)-(6).

      In formulating Thomas's mental RFC,[6] the ALJ gave "little weight" to the opinion of Thomas's therapist, Stanley, whom Thomas saw regularly over a two-year period.[7]  Docket Item 11 at 24.  The ALJ rejected Stanley's opinion about Thomas's significant limitations[8] because, the ALJ said, Stanley's treatment notes "do[] not support the opinion," *id.,* and because Stanley's opinion "is not consistent with the other treatment records," *id.* at 25.  The ALJ observed that both Stanley's treatment notes and other records "indicate that the claimant had missed multiple mental health appointments" and that "[e]ven when the claimant attended appointments, he did not always engage with

---

still consider the "length, nature[,] and extent of the treatment relationship" with the claimant in assigning weight to those opinions.  *Feliciano o/b/o D.F. v. Comm'r of Soc. Sec.*, 2020 WL 1815754, at *3 (W.D.N.Y. Apr. 10, 2020).

    [6] The ALJ found that Thomas has the mental RFC to perform light work as defined in 20 C.F.R. § 416.967(b) except that Thomas "is able to perform simple, routine tasks; is able to tolerate a low[-]stress environment, meaning occasional decision making; is able to have occasional interaction with coworkers and supervisors; and can have no interaction with the general public."  Docket Item 11 at 20.

    [7] Stanley noted in her March 13, 2019 report that she had been treating Thomas "biweekly since 6/19/[20]17."  Docket Item 11 at 1006.

    [8] Among other things, Stanley found that Thomas is "[u]nable to meet competitive standards" in maintaining regular attendance, being punctual, and sustaining an ordinary routine without special supervision.  Docket Item 11 at 1008.  Stanley also found that Thomas is seriously limited in completing a "normal workday and workweek without interruptions from psychologically based symptoms" and in dealing with normal work stress.  *Id.*

his therapist." *Id.* The ALJ thus suggested that if Thomas's limitations were as bad as Thomas said or as Stanley opined, Thomas would have been more diligent in attending appointments and engaging with his therapist. *See id.* at 24-25 (noting that Thomas was "discharged from [a mental health treatment] program for nonattendance," was "not actively engaging in making changes and steps toward his goals," "had missed multiple mental health appointments," and "did not always engage with his therapist"); *id.* at 25 ("The claimant's failure to fully engage in . . . mental health treatment suggests that his symptoms are not as disabling as he alleges.").

The ALJ discounted parts of the opinion of a consultative examiner, Adam Brownfeld, Ph.D., for largely the same reasons. For example, Dr. Brownfeld found that Thomas's insight and judgment were "poor," that his "recent and remote memory" was "[i]mpaired," and that he "requires supervision." *Id.* at 451-52. Based on those and other findings, Dr. Brownfeld opined that Thomas's mental impairments "may significantly interfere with [his] ability to function on a daily basis." *Id.* at 452. The ALJ afforded Dr. Brownfeld's opinion only "partial weight" and explicitly rejected any limitations as to Thomas's daily functioning, however. *Id.* at 23. In doing so, the ALJ found that "the record does not show that [Thomas's] problems would interfere with his daily functioning," *id.*, in part because Thomas had received "only intermittent mental health treatment," *id.*, which apparently was related to the ALJ's findings about noncompliance, *see id.* at 25 ("treatment notes indicate that [Thomas] was not consistent in attending appointments").

For several reasons, the ALJ erred in reaching those conclusions and formulating Thomas's RFC.

First, and perhaps most basically, the ALJ did not even consider the possibility that Thomas's mental health issues might have been the reason that Thomas missed appointments and failed to engage with his therapist. Although an ALJ is permitted to "consider [a claimant's] noncompliance with treatment as a factor weighing against [the claimant's] credibility," *Lee v. Colvin*, 2015 WL 3505791, at *6 (W.D.N.Y. June 3, 2015), the ALJ may not draw that negative inference "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment," SSR 96-7p, 1996 WL 374186, at *7;[9] *see also Scott v. Comm'r of Soc. Sec.*, 2020 WL 6205693, at *4 (W.D.N.Y. Oct. 22, 2020) ("The ALJ appears to infer that non-compliance equates to no limitations; however, such an inference is improper.").

Here, as the ALJ himself acknowledged, Thomas said that he has trouble remembering his appointments and that he sometimes cannot get out of bed to attend appointments. *See* Docket Item 11 at 25. Likewise, the ALJ noted that Thomas "reported that he was choosing not to work on his area of need, but he did not state why." *Id.* The severity of Thomas's mental health issues may well have been the reason that he missed his appointments and sometimes "did not . . . engage with his therapist," *id.*, even when he kept them. *See Johnson v. Colvin*, 2016 WL 624921, at *2 n.1 (W.D.N.Y. Feb. 17, 2016) ("Rather than indicating a lack of a serious mental impairment, [the] plaintiff's noncompliance was very possibly a further indicator that her

---

[9] SSR 96-7p was rescinded and superseded on October 25, 2017 by SSR 16-3p, 2017 WL 5180304. This development did not alter the content of SSR 96-7p in any manner that is relevant to this case.

6

mental health impairments interfered with her functioning."). But the ALJ never even entertained that possibility.

What is more, the ALJ explicitly found that Thomas suffers from severe bipolar disorder, Docket Item 11 at 18, but he failed to consider the effect of bipolar disorder on Thomas's ability to comply with treatment. As another judge in this District has noted, "[f]ederal courts have recognized that failure to comply with treatment can be a direct result of bipolar disorder." *Jimmeson v. Berryhill*, 243 F. Supp. 3d 384, 391 (W.D.N.Y. March 20, 2017) (Feldman, M.J.) (collecting cases). But instead of even entertaining the possibility that Thomas's failure to actively engage in treatment was the result of his illness, the ALJ concluded that it meant that Thomas's "symptoms are not as disabling as he alleges." Docket Item 11 at 25. That was error. *See Jimmeson*, 243 F. Supp. 3d at 392 ("If compliance with treatment is used to justify an assigned RFC, it is incumbent upon the ALJ to . . . fully consider whether a manifestation of the [claimant's] mental health impairment is non-compliance with recommended treatment.").

The ALJ also failed to evaluate Stanley's opinion using the regulatory factors for weighing non-acceptable medical source opinions. *See Montanez v. Berryhill*, 334 F. Supp. 3d 562, 564 (W.D.N.Y. Nov. 26, 2018) ("[A]n ALJ must consider opinions by [non-acceptable medical sources] using the same factors that are typically used to evaluate the opinions of treating physicians . . . and must explain in his decision the weight given to each and the reasons therefor. The ALJ's failure to do so constitutes grounds for remand.") (internal citation omitted) (citing 20 C.F.R. §§ 404.1527(c)(1)-(6), (f)(1)). For example, the ALJ did not even acknowledge Stanley's treatment relationship with

Thomas, let alone "the frequency, length, nature[,] and extent of [that] treatment."[10] *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).  Stanley saw Thomas and evaluated him regularly in therapy sessions from 2017 to 2019, and therefore likely had "a detailed, longitudinal picture of [Thomas's] medical impairments."  *See* 20 C.F.R. § 416.927(c)(2).  In other words, because Stanley had "close contact with [Thomas]," she had enough "personal knowledge and expertise to make judgments about [his] impairment(s), activities, and level of functioning over a period of time."  *See* SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006).  And because a "treatment provider's perspective [is] . . . all the more important in cases involving mental health," *see Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119, 122 (2d Cir. 2018), the ALJ's error in evaluating Stanley's opinion is of even greater significance.

The ALJ also failed to appropriately assess the evidence supporting Stanley's opinion and the consistency of her opinion with the record as a whole.  *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion.").  For example, the ALJ found that Stanley's own "treatment records . . . do not support the opinion posited." Docket Item 11 at 25, 26 (citing *id.* at 1013, 1020, 1032, 1037, 1040, 1061, 1062, 1103). But other than citing examples of Thomas's missed appointments, times when Thomas failed to "actively engag[e]" in treatment, and notations that there were "no significant

---

[10] Although the ALJ mentioned some of Stanley's treatment notes in evaluating Stanley's opinion, *see* Docket Item 11 at 24-25 (citing *id.* at 1013, 1020, 1032, 1037, 1040, 1061, 1062, 1103), the ALJ did so to discount Stanley's findings, not to credit her longitudinal perspective of Thomas's mental functioning, *see id.* at 24 ("A review of [Exhibit] 21F," Stanley's treatment records, "shows it does not support [Stanley's] opinion in [Exhibit] 20F.").

changes" in Thomas's condition, *see id.* at 25, the ALJ did not explain any alleged inconsistency between Stanley's records and her opinion. Likewise, the ALJ asserted that Stanley's opinion was "not consistent with the other treatment records," but he supported that assertion only with records of missed appointments and lack of engagement in treatment, *id.*—both of which, as noted above, might have been caused by Thomas's mental health issues.

Finally, the ALJ also erred in failing to address the impact of stress on Thomas's ability to work. Both therapist Stanley and Dr. Brownfeld opined that Thomas has significant limitations in dealing with stress. *See id.* at 452 (Dr. Brownfeld's finding that Thomas "is markedly limited in . . . appropriately dealing with stress"), *id.* at 1008, 1009 (Stanley's finding that Thomas "struggles with memory at times due to stressors," "struggles with socialization and managing agitation . . . when under increased stress," and is unable to meet competitive standards in managing "normal work stress"). But other than by generally limiting Thomas to a "low[-]stress environment," *id.* at 20, the ALJ did not evaluate how stress might affect Thomas's ability to work.

"Because stress is 'highly individualized,'" an ALJ must "make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work." *See Stadler v. Barnhart*, 464 F. Supp. 2d 183, 188-89 (W.D.N.Y. Dec. 11, 2006) (((citing SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985)) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job . . . [and a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC

9

assessment.")); *see also Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y. April 22, 1996) ("Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments."). Moreover, a general limitation for "low[-]stress" work, Docket Item 11 at 20, described only as requiring "occasional decision making," *id.*, does not evidence the individualized inquiry required for evaluating the effect of stress, *see Haymond v. Colvin*, 2014 WL 2048172, at *9 (W.D.N.Y. May 19, 2014) (The RFC for "unskilled work in a 'low stress, low contact' environment[] did not adequately take into account the functional limitations caused by [the claimant's] various severe mental impairments on [the claimant's] ability to deal with everyday stressors."). Where, as here, stress affects the claimant's ability to function, the ALJ must explicitly address any related limitations unique to the claimant. *See Stadler*, 464 F. Supp. 2d at 189. And the failure to do that here was another error requiring remand.

For all these reasons, remand is required. On remand, the ALJ should explicitly address whether Thomas's mental impairments are the reasons for any noncompliance with treatment and address the effect of stress on Thomas's ability to work. The ALJ also should evaluate the opinion of therapist Stanley in light of the section 416.927(c) factors and give appropriate deference to providers with longtime treatment relationships.[11]

---

[11] The Court "will not reach the remaining issues raised by [Thomas] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 13, is DENIED, and Thomas's motion for judgment on the pleadings, Docket Item 12, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   July 27, 2022
         Buffalo, New York

                                               */s/ Lawrence J. Vilardo*
                                               LAWRENCE J. VILARDO
                                               UNITED STATES DISTRICT JUDGE